**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
DAVID ROLAND CONLEY,           )
                               )
            Petitioner,        )
                               )
     v.                        )     1:12CV1044
                               )
JOSEPH B. HALL,                )
                               )
            Respondent.        )
```

**MEMORANDUM OPINION AND ORDER**

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On May 25, 2011, in the Superior Court of Cabarrus County, a jury found Petitioner not guilty of forgery, but guilty of uttering a forged instrument, attempting to obtain property by false pretenses, and habitual felon status in cases 10 CRS 3310, 50743, and 50744. (Docket Entry 1, ¶¶ 1, 2, 4-6; see also Docket Entry 9, Ex. 3 at 26-28, 40.)[1] The trial court consolidated the offenses into one Class C felony and sentenced Petitioner in the presumptive range to 117 to 150 months in prison. (Docket Entry 1, ¶ 3; see also Docket Entry 9, Ex. 3 at 43-44.)

With the aid of appellate counsel, Petitioner appealed his convictions (Docket Entry 1, ¶¶ 8, 9 (a)-(f); see also Docket Entry 9, Exs. 1, 3-5), and the North Carolina Court of Appeals affirmed. State v. Conley, ___ N.C. App. ___, 724 S.E.2d 163 (2012).

---

[1] For attachments to Respondent's memorandum in support of his instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Petitioner, through appellate counsel, thereafter submitted a petition for discretionary review ("PDR") to the North Carolina Supreme Court (Docket Entry 9, Ex. 6; see also Docket Entry 1, ¶ 9(g)), which counsel dated as signed on May 21, 2012 (Docket Entry 9, Ex. 6 at 11, 12), and which that court stamped as filed on May 21, 2012 (id. at 2). The North Carolina Supreme Court denied the PDR by order dated and filed August 23, 2012. State v. Conley, 731 S.E.2d 413 (N.C. 2012). Petitioner did not then petition the United States Supreme Court for a writ of certiorari. (Docket Entry 1, ¶ 9(h).)

Petitioner subsequently submitted his instant Petition to the Western District of North Carolina (Docket Entry 1), which he dated as signed on September 7, 2012 (id. at 11),[2] and which that court stamped as filed on September 10, 2012 (id. at 1). On September 20, 2012, the Western District transferred the case to this Court, because the county of Petitioner's convictions, Cabarrus, lies within the Middle District of North Carolina. (See Docket Entries 3, 4.) Respondent moved for summary judgment on the merits (Docket Entry 8) and Petitioner filed a responsive "Motion for the Magistrate Judge to Reject Respondent's Motion for Summary Judgment" which the Clerk of Court docketed as a response in opposition to Respondent's Motion for Summary Judgment (Docket Entry 12). The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 13.)

---

[2] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

## Facts

The facts of the case, as set out in the North Carolina Court of Appeals' opinion affirming Petitioner's convictions, are as follows:

> The State's evidence at trial tended to show the following. On 4 March 2010, [Petitioner] entered the SunTrust Bank ("SunTrust") located at 970 South Cannon Boulevard in Kannapolis. [Petitioner] presented a check (hereinafter referred to as "the check" or "the Sun[T]rust check") to a teller, Stephanie Craft. The check bore check number 52629, named Allied Concrete Forming & Associates, Inc. ("Allied") as the account holder, and was made payable to [Petitioner] in the amount of $674.20. Ms. Craft ran the check through the bank's computer system for verification purposes and noticed that an alert had been placed on Allied's account. The alert indicated that the number of the check, 52629, was out of sequence with the numbers of those checks currently drawn on Allied's account. Ms. Craft immediately contacted Allied by telephone and spoke with Lissette Rodriguez, an assistant controller and human resources manager. Ms. Craft requested verification of the check's validity. Ms. Rodriguez informed Ms. Craft that the check was invalid and had not been issued by Allied.
>
> Ms. Rodriguez contacted Kannapolis Police Department, and Sergeant Jason Hinson ("Sergeant Hinson"), the investigating officer, arrived shortly thereafter. [Petitioner] explained to Sergeant Hinson that he had acquired the SunTrust check in exchange for performing some "odds and ends work" for Allied. [Petitioner] equivocated, however, when Sergeant Hinson informed him that the check was fraudulent. Sergeant Hinson placed [Petitioner] under arrest and transported [him] to the police station for questioning.
>
> At the police station, [Petitioner] explained to Sergeant Hinson that he had met a man - whom he was unable to identify to the police - in Charlotte who asked him if he was interested in making some fast cash. [Petitioner] agreed, and the man drove [Petitioner] to a local McDonald's, where the man asked [Petitioner] for his identification card. The man left the McDonald's with [Petitioner]'s identification card and returned thirty minutes later with the SunTrust check. The man instructed [Petitioner] to go to SunTrust and cash the

check, stating that the two of them would split the proceeds once the transaction had been completed.[1]

FOOTNOTES

[1] [Petitioner] also executed a voluntary written statement at the police station reciting this account of the SunTrust transaction and, more specifically, how the SunTrust check had come into his possession.

On 29 March 2010, [Petitioner] was indicted on charges of forgery of an endorsement, uttering a forged instrument, and attempt to obtain property by false pretenses. The matter came on for trial at the 24 May 2011 Criminal Session of Cabarrus County Superior Court. At trial, Ms. Rodriguez testified that only she and Allied's controller, Nancy Simpson, were authorized to issue checks on Allied's behalf. According to Ms. Rodriguez, the signature on the SunTrust check resembled Ms. Simpson's signature, but the font was "all off" and "really different." Rodriguez further testified that the genuine Allied check numbered "52629" has not been issued to anyone, and that that particular check remained located in her office at the time [Petitioner] presented the SunTrust check. Rodriguez also stated that [Petitioner] had no affiliation with Allied and, to her knowledge, that Allied had never issued a check to [Petitioner].

During its examination of Ms. Rodriguez, the State elicited testimony regarding a second forged check (hereinafter referred to as "the Wachovia check"), which was also made payable to [Petitioner] and drawn on Allied's account. The prosecutor asked Ms. Rodriguez whether she was aware of any other counterfeited or forged checks issued or made payable to [Petitioner] besides the SunTrust check, to which Ms. Rodriguez responded: "Yes. As a matter of fact, the same day of that incident, we got a copy of another check, check number 52,630, and it's actually payable to [Petitioner]." Ms. Rodriguez testified that the Wachovia check was also paid to the order of [Petitioner] in the amount of $674.20 - the same amount as the SunTrust check - and was deposited at Wachovia Bank.

The defense did not present any evidence at trial, but [Petitioner]'s motion to dismiss at the close of the evidence was denied. The jury subsequently convicted [Petitioner] on the uttering a forged instrument and attempting to obtain property by false pretenses charges, but acquitted [Petitioner] on the forgery charge. The

-4-

trial court determined that [Petitioner] had a prior
record level of VI and sentenced [Petitioner] as a
habitual felon to a consolidated presumptive term of 117
to 150 months.

Conley, ___ N.C. App. at ___, 724 S.E.2d at 165-66.

## **Claims**

Petitioner raises two claims for relief in his Petition.  He alleges that he received ineffective assistance of appellate counsel because (1) he did not cash or deposit a check at Wachovia Bank; and (2) he does "not understand how the court can place the habitual felon" status on him when he does "not have three attempting to obtain property by false pretenses" convictions. (Docket Entry 1 at 6, 8.)[3]

## **Discussion**

As both of Petitioner's claims involve alleged ineffective assistance by his appellate counsel, the Court will discuss those claims together.  Petitioner first contends that his appellate counsel was ineffective because Petitioner did not cash or deposit a check at Wachovia Bank.  (Docket Entry 1 at 6.)  Although Petitioner does not further develop this claim in his Petition or in opposition to the instant Motion for Summary Judgment, the Court interprets his argument as a claim that his appellate counsel did

---

[3] Petitioner has failed to exhaust his state court remedies with respect to these claims, as he could not have raised them on direct appeal and has not raised them via MAR in the state courts.  See Robinson v. Lewis, No. 5:12-HC-2021-F, 2013 WL 1182658, at *6 (E.D.N.C. Mar. 21, 2013) (unpublished) (holding state remedies exhausted by either pursuing a direct appeal through the North Carolina Supreme Court or by filing a MAR in the state trial court and appealing its denial to the North Carolina Court of Appeals); Simpson v. Branker, No. 3:11-cv-348-RJC, 2012 WL 4321294, at *3 (W.D.N.C. Sept. 20, 2012) (unpublished) (same).  Nevertheless, the Court may deny these unexhausted claims on the merits.  28 U.S.C. § 2254(b)(2).

-5-

not effectively address the Wachovia check on appeal.  Petitioner further alleges that his appellate counsel provided ineffective assistance because Petitioner does not believe he could be convicted of habitual felon status without three prior convictions for attempting to obtain property by false pretenses.  (Id. at 8.)  Again, Petitioner does not flesh this claim out further, but the Court interprets this argument as a claim that his appellate counsel should have attacked the basis of his habitual felon conviction on appeal.  These claims lack merit.

In order to prove ineffective assistance of appellate counsel, Petitioner must establish that his appellate counsel's performance fell below the standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  That standard requires a showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Petitioner, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have changed.  See id. at 678-88, 694.  Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

Here, a review of Petitioner's 34-page appellate brief demonstrates that his appellate counsel did raise several issues regarding the Wachovia check: (1) the trial court's jury instructions were vague and ambiguous as to whether Petitioner's charges arose out of the SunTrust check or the Wachovia check; (2)

-6-

the trial court erred by admitting, over Petitioner's objection, evidence of the Wachovia check; and (3) the trial court erred when it impermissibly stated an opinion in response to a jury question about the Wachovia check. (Docket Entry 9, Ex. 4.) These arguments are reasonable and well-stated, and Petitioner does not detail, either in his Petition or in his response in opposition to the instant Motion for Summary Judgment, what other arguments his counsel should have made regarding the Wachovia check.

With regard to Petitioner's habitual felon conviction, Petitioner incorrectly assumes that the three prior felonies supporting his habitual felon status must involve the same offense as his instant convictions. See N.C. Gen. Stat. § 14-7.1 (2011) ("Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon."). Furthermore, the evidence of record amply supports the basis for Petitioner's habitual felon status. (See Docket Entry 9, Ex. 3 at 29-40; Ex. 8 at 116-37.) Again, Petitioner does not describe what arguments his appellate counsel should have made regarding the habitual felon conviction.

In sum, no basis exists to conclude that appellate counsel's performance fell below an objective standard of reasonableness. See Jones v. Barnes, 463 U.S. 745, 750-54 (1983) (recognizing that appellate counsel need not raise every non-frivolous issue requested by defendant); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy

when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Petitioner's bare and unsupported allegations that his appellate attorney failed him warrant no relief. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F.3d 255, 266 n.4 (4th Cir. 1999).

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 8) is **GRANTED,** that the Petition (Docket Entry 1) is **DENIED,** and that this action is **DISMISSED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 6, 2013